Christian, J.,
delivered the opinion of the court.
The controversy in this suit grows out of a contract *369 entered into on the 2d December 1862, between the appellant and the appellee, which is in the following words:
Know all men by these presents, that we, Philip Earp and Sullivan P. Boothe, of the county of Pittsylvania, State of Virginia, do make and enter into, and bind ourselves, our heirs and assigns, to abide by the following contract and agreement, to wit: Whereas the said Philip Earp did some time past purchase of a certain John Brightwell the tract of land on which the said Earp now lives and enjoys title thereto, and not being able to pay the purchase money for said land to said Brightwell, which amounts to seven hundred dollars, and the said Earp being desirous of possessing a part of the land, agrees with the said Boothe to convey to him, the said Boothe, a portion of said land by a certain line agreed, supposed to be between thirty and forty acres, for the same amount per acre, as he gave for it; provided said Boothe will advance the whole amount of the purchase money to the said Brightwell, and allow him three years to replace the amount paid by said Boothe, after deducting the price of that portion cut oft' for said Boothe on the north end of the tract; to which the said Boothe assents. But if the said Earp shall fail to pay the said Boothe the full amount of the principal and interest advanced for the said Earp, to pay for the portion retained by him, then he promises and binds himself, his heirs and assigns, to convey title to the residue of the said tract to said Boothe; to which said Earp assents. To a faithful performance of the above cuntract we do set our hands and affix our seals this 2d day of December 1862.
(Signed) Philip Earp. [Seal.]
S. P. Boothe. [Seal.]
The app jilee, Boothe, complied with his contract, and *370 paid over to Brightwell, or advanced to Earp for that purpose, who paid it to Brightwell* the whole of the purchase money, principal and interest, due to Brightwell from Earp.
Earp totally failed to comply with his contract. He neither conveyed to Boothe the thirty or forty acres lying on the north end of the tract designated in the contract, nor did he pay any part of the purchase money advanced for him to Brightwell.
In February 1866 Boothe filed his bill in the County court of Pittsylvania, the case being afterwards removed to the Circuit court, with which he exhibited the contract above referred to, alleging his compliance with it, in every particular, and the failure of the defendant, Earp, both to convej7 to him the portion of the tract of land according to said agreement, and to pay any part of the purchase money which he had advanced to Brightwell; and claiming that by the terms of the contract, he was entitled to have the whole of the land conveyed to him; and called upon the court to compel the defendant to make such conveyance; concluding with the usual prayer for general relief.
Earp answered the bill. He admitted that he executed the covenant filed with the bill; and admitted that the purchase money due on the land to Brightwell had been advanced by Boothe and fully paid to Bright-well, who had uo further claim on the laud. But he insisted that the agreement between him and Boothe was nothing more nor less than a mortgage on the land to secure the money loaned by Boothe. He also insisted that the contract was usurious and void. By way of further defence he sets up what seems to be intended as a sort of plea of tender, in which he says “that before the expiration of the three years’ time allowed him to refund the money, that he offered to set- *371 tie with and pay said Boothe the value of the Confederate money so lent, but the said Boothe] refused, to receive it, and insists upon taking the whole of the respondent’s land,” &c.
There was no proof in this cause that there was anything like a tender made; and this defence set up in the answer is abandoned by the counsel who argued the case in this court.
In June 1867, the cause came on to be heard on the bill, answer, replication, exhibit filed with the bill, and examination of witnesses; “and the court being of opinion, that the covenant in the proceedings mentioned is a mortgage, and not a conditional sale, as to all the tract of land therein mentioned, except that portion of the same ‘in the north end of said tract,’ agreed by said Earp to be conveyed to the plaintiff by certain lines agreed upon, supposed to contain between thirty and forty acres, to which thirty or forty acres the plaintiff is entitled at the average price to be paid by said Earp to Brightwell; * # * and the plaintiff is entitled to subject the residue of said tract to the payment of the money advanced by him after crediting Earp with the price of said thirty or forty acres of land, and after scaling the same according to the value of Confederate States treasury notes at the time of the loan from Boothe to Earp; ” it was ordered that a commissioner appointed for that purpose “should survey the land on the north end of said tract, supposed to contain thirty or forty acres, according to the lines agreed upon by the parties,” &c.
On the 5th day of June 1868, the cause came on to be again heard on the papers formerly read, and the report of the commissioner made in pursuance of decree of May term, 1867, returning map of survey of the land to which the plaintiff’ is entitled (in the opin *372 ion of the court), absolutely, under his covenant with defendant, to which report there was no exception; and the court approved and confirmed said report, and without deciding any other question arising in the cause, adjudged, ordered and decreed “that the plaintiff hold the thirty-five acres of land designated in the plat returned with said report, in fee simple.”
On the 2d day of June 1870 another decree was entered, directing that the defendant do pay to the plaintiff' the sum of one hundred and fifty-four dollars and sixty cents, with interest thereon at the rate of six per cent, per annum from the 20th day of December 1862 till paid, that being the principal sum advanced by the plaintiff' on that day to pay for the land in the bill mentioned ($700), scaled as of that day, &c.
The decree further provided for a sale of the land if the sum decreed against the defendant, Earp, should not be paid within sixty days; the terms of the sale being fixed on a credit of six and twelve months, except as to the sum of seventy-five dollars, directed to be paid in cash.
From these several decrees an appeal was allowed by one of the judges of this court.
The following are the errors assigned by the counsel in this court:
1st. That the contract between Earp and Boothe was ■ usurious and void; and that it was error to have rendered any decree in favor of the plaintiff.
2d. That it was error to require Earp (the appellant) to pay the value of the money at the time it toas lent, instead of at the maturity of the contract.
3d. That it was error to have decreed a sale upon the terms and conditions prescribed in the decree.
As to the defence of usury, set up in the answer, there is nothing in the facts to show that the purchase of the *373 thirty or forty acres by Boothe was a shift or device to obtain from Earp a greater rate of interest than that allowed by law. As to that tract of land Boothe agreed to take the shoes of Earp in the purchase from Brightwell, at the same price which Earp had agreed to pay. It is true, he was paid in Confederate money, and the land, in the opinion of one witness, was worth $15.00 per acre in that currency, while the price fixed upon it was $5.60 per acre. But this latter sum was what Earp had agreed to pay Brightwell, who was willing to receive, and did receive, the same amount, in the same currency, from Boothe. Earp could have retained the land by paying $5.60 per acre to Brightwell. Boothe simply paid the debt due to Brightwell; and as to this part of the land, took the place of Earp in the purchase. If the price was low, it was exactly the same which Earp agreed to pay, and Brightwell was willing to receive in Confederate currency. All that can be said of such a transaction, is, that the necessities of the debtor , and his anxiety to retain a part of the land, might have induced him to sell- it for something less than its real value, but it cannot be said to be marked by those indicice which stamp it as usurious.
The second error assigned, is, that “ the appellant was required to pay the value of the Confederate currency at the time it icas lent, instead of at the maturity of the contract.”
This objection is founded upon a misapprehension of the legal effect of the contract between the parties. It was not a contract to pay a certain sum of money three years after date; but Earp had the right, at any time within three years, to return the money advanced for him by Boothe to Brightwell; and if he had tendered it the next day, Boothe would have been bound to receive it.
*374 It was a privilege enuring to Earp under the contract, to repay the money at any time within three years, while Boothe could not demand it until the end of the three years. Earp permitted the three years to elapse without having paid a dollar. At that time Confederate money had perished and was of course without value to be scaled, and the court, in adjusting the rights of the parties after Confederate money, which was the subject of the loan, had passed out of existence, properly scaled the amount to its value at the time when it was advanced by Boothe.
As to the third assignment of error to the effect that different terms ought to have been prescribed in'the decree of sale, it is sufficient to remark that tiffs decree was entered before the passage of the act requiring judicial sales of land to be made on a credit of one, two and three years, and that under all the cirbumstanees of the case, the terms of sale, upon a credit of six and twelve months, were not unreasonable.
The court is therefore of opinion that there is no error in the decree complained of to the prejudice of the appellant. But it is contended by the learned counsel for the appellee, that there is error in the decree to the prejudice of the appellee to the .extent that it declares that the contract between the parties (except as to the thirty or forty acres), is in effect- a mortgage and not a conditional sale. The court is of opinion that the said decree is not erroneous in this respect.
It is often difficult to distinguish a conditional sale from a mortgage. The line of discrimination is confessedly indistinct, and each case must in a great measure depeud upon its own peculiar circumstances. Generally speaking the difference between them is, that the one is a security for a debt, the other a purchase for a price paid, or to be paid, to become absolute in a par *375 ticular event; or a purchase accompanied by an agreement to resell upon particular terms. The only difficulty is to ascertain the character of the transaction. It may be premised that where upon the face of the transaction it is doubtful whether the parties intended to make a mortgage or a conditional sale, courts of equity will always incline to consider it a mortgage, because by means of conditional sales oppression is frequently exercised over the needy, and they are too often made the vehicle of extortion. 1 Hilliard on Mortgages, 85, and cases there cited; Poindexter v. Mc Cannon, 1 Dev. Eq. R., 375-6.
But this court has fixed the criteria which must govern in determining the character of the transaction, whether it is to be considered a conditional sale or a mortgage. In the case of Robertson v. Campbell & Wheeler, 2 Call 421, Pendleton, J. said: “It is often a nice and difficult question to draw the line between mortgages and conditional sales. But the great desideratum which this coui't has made the ground of their decision, is, whether the purpose of the parties was to treat of a purchase, the value of the commodity contemplated, and the price fixed; or whether the object was a loan of money, and a security or pledge for the repayment intended.” This rule, laid down by Judge Pendleton, has been adopted in several cases decided by this court. See King v. Newman, 2 Munf. 40; Moss v. Green, 10 Leigh 251; 2 Rob. Prac. (old ed.) 51, and cases there cited.
Tried by these criteria and the authorities above cited, it is plain, that, (except as to the small tract of thirty or forty acres, which was purchased at a stipulated price, Boothe agreeing, as to that, to take the shoes of Earp, as purchaser from Brightwell,) the transaction between the parties must be treated, as to the main tract, as a mortgage, and not as a conditional sale. As to this part of the *376 land, there was no negotiation as to the price. Nothing was said as to its value. The negotiation was for a loan of money; and it is so treated by the plaintiff'in his bill. He says, after setting forth the purchase of the land by Earp from Brightwell: “ Some time in the year 1862 the said Earp, finding he was unable to pay for it, applied to your orator to advance for him to Brightwell the said sum of $700.00, with interest,” &c. The defendant, in his answer, says that he applied to plaintiff to borrow the money to pay Brightwell for the land purchased of him; and that the only terms upon which the plaintiff would agree to lend respondent, was upon the terms set fcrth in the covenant filed with the bill. It is thus clear that the transaction between the parties was a borrowing and lending of money, and not for a sale of the land, except as to the small quantity above referred to. The only object of the negotiation was a loan of money, and security for its repayment. In such cases the contract will be treated as a mortgage, and not a sale. Such is the unwillingness of courts of equity to sustain forfeitures and limit the right of redemption, that it will never be done, in a case where it appears that the first object of the party was to borroio money and not to sell property.
The decree of the Circuit court must be affirmed.
Decree aeeirmed.