Burks, J.,
delivered the opinion of the court.
This is an appeal from a decree of the circuit court of Srnythe county, dismissing the bill of the appellant, filed against the heirs of Philip Pickle, deceased, to redeem *350 a tract of land from an .alleged mortgage to said decedent.
The appellant being indebted .to. one Jospeh W. Davis in the sum of .$1,422.65, by-deed bearing date the 20th of February, 1841, in which his wife united, conveyed this land (his own) to a trustee to secure the payment of this debt, with accruing interest, investing the trustee with power of sale for default of payment after four years from the date of the deed.
On the 18th day of October, 1842, the appellant was taken into custody by. the sheriff of S-mythe county on two writs of ca. sa., for debts amounting together to a sum not exceeding $331.00; and was ■ discharged from custody on the same day upon taking the insolvent debtor’s oath and surrendering in his schedule- of property., and by deed conveying to the sheriff “all his right, title, interest, and claim in and to” the tract of land aforesaid.
*On the 17th day of January, 1843, the sheriff sold the land by public auction, and the said Joseph W. Davis (the beneficiary in the trust deed aforesaid), became the purchaser, at the price of $1,500.
On the 25th day of December, 1843, the appellant and his wife, the sheriff of Smythe county and the trus.tee in the said deed of trust, united in a deed of that date, by .which they conveyed'the land to the said Davis; and afterwards, .on. the 24th- day of May, 1845, the said Davis and his wife,.by deed of that date, conveyed the said land to the said Philip Pickle.
Philip Pickle died in the year 1873, and the appellant filed his bill in August, 1874, alleging that, although the deed to Pickle was absolute in its terms, it was in fact and in effect only a security for the payment of the debt aforesaid and interest, which. had been advanced by Pickle to' Davis-, for the appellant and at his request, upon an agreement that the land should be conveyed to Pickle and held by him as a security for the amount thus advanced.
The general rule, that parol evidence is inadmissible to contradict or substantially vary the legal import of a written instrument, in its application to particular cases, is subject to many qualifications or exceptions, real or apparent, now as well established as the rule itself. Some of the more prominent of these are stated and explained by Judge Allen in a well considered opinion delivered in the case of Towner v. Lucas’ ex’or, 13 Gratt. 705; and amongst the rest, he mentions the exception, if exception it be, that parties to a deed may, by oral evidence, prove that a deed, absolute oh its face, was intended to' be-a mortgage or security for a debt. Whether this. be a real exception, or merly apparent and recon-ciliable with the general rule, as the -judge seems to think it is, on whatever ground it rests, it is certainly well established.
*It is recognized by the English courts, fully by the supreme court of the United States, in some form or other by the courts of most of the states of the Union, and by . none more fully than by this court. Conway’s ex’ors v. Alexander, 7 Cranch R. 218; Spriggs v. The Bank of Mount Pleasant, 14 Peters R. 201; Russell v. Southard, 12 How. U. S. R. 139; Babcock v. Wyman, 19 How. U. S. R. 289; Morgan’s Assignees v. Shinn, 15 Wall. U. S. R. 105; Ross v. Norvell, 1 Wash. 14; Robertson v. Campbell & Wheeler, 2 Call 421; King v. Newman, 2 Munf. 40; Bank of U. States v. Carrington & others, 7 Leigh 566; Phelps v. Seely, 22 Gratt. 573; Thornbraugh v. Baker, 2 White & Tud. Led. Cas. in Eq. (ed. 1852), part 2, 433, 434; ed. 1877, pp. 40, 41, part 1, 533 and cases there cited.
. While, however, it is well settled, that oral evidence is admissible for the purpose stated, it is equally well settled, that to avail, it must be clear and the proof cogent.
Upon a careful examination of the record in this case I am satisfied that the appellant, notwithstanding the difficulties he has had to encounter, has furnished the proof necessary, under the rules of law to entitle him to the relief he seeks.
When he was taken into custody by the sheriff under the ca. sas., he surrendered and conveyed to the sheriff all his interest in the land which had been previously conveyed in trust to secure the debt to Davis. That interest was merely his equity of redemption. It was all that the sheriff took under the deed to him and all that he could sell. And yet it seems that instead of selling the equity of redemption only, he undertook to sell, and did pretend to sell the land in fee, free of the encumbrance of the trust deed. This is apparent from the return he made on the ca. sas. and from other evidence in the cause. The land was bought by Davis, as *before stated, at the price of $1,500. The return states that “the property was sold, but did not bring the amount of a deed of trust upon it, executed before the execution was issued.” The same return was made on each execution. The idea of the sheriff seems to have been that it was his duty to exercise the powers of a chancellor, to sell the land out and out, free of the encumbrance of a deed of trust, and apply the proceeds, first to the encumbrance and then to the executions in his hand's; and as the land did not bring enough to satisfy the deed of trust, there was nothing for the execution creditors. The sale was a nullity. The sheriff had .no power to make it, and Davis took no title under it.
The appellant, and Davis also, seem to have been under the same delusion as to the sheriff’s powers and duties in the premises, and. both seem to have been of the opinion that Davis, under the sale, had become the owner of - the land, - and that the $1,500 which he had agreed to pay for the land, was to be credited on his debt; thus leaving still a balance thereupon due him. Previously to the sale, Davis had given to the appellant a writing to the effect that if he became the purchaser of the land at the sheriff’s sale at a pnce less than the amount of his debt, the appellant should have the right within twelve months to redeem the same by paying to Davis the amount of his debt and interest. This writing, although with *351 out consideration, seems to have been regarded and treated by the parties as binding, giving a right on the one side and imposing an obligation on the other.
Under these circumstances and this condition of the title, the appellant, anticipating that he would not be able to pay to Davis the amount of his debt and interest within the twelve months, applied to Philip Pickle, who was his brother-in-law, to aid him, and Pickle consented *to do so; and it was thereupon agreed between them that Pickle should advance for the appellant to Davis the amount of his debt and interest, and take the land and hold it until he was repaid by the appellant; that the appellant should retain possession of the house on the land and some lots around it, and surrender possession of the residue of the land to Pickle, to be used by him to keep down the interest on the money advanced, with permission to appellant to cultivate so much of said residue thus surrendered as he might desire, paying rent therefor. This parol agreement is clearly proved, I think, by the deposition of James E. Pendleton, who is corroborated by Joseph W. Davis. Peculiar weight is to be given to the testimony of Pendleton. He was, and had been for many years, clerk of the county court of Smylhe, was a lawyer by profession, and, as he states, the general adviser of the people of the county in their law matters. He drew the deed to Davis and was present by appointment with Pickle when the acknowledgments of the deed were taken by the justices. This witness also states that there was some difficulty in getting the wife of the appellant to unite in the deed, and she refused to execute it until assured by Pickle, through Pendleton, that the only object was to secure the land to the appellant and his wife. Under this agreement it was that the deed was made to Davis, and afterwards by him to Pickle; and under the same agreement the appellant retained and still holds possession of the house, and surrounding lots, free of rent, and Pickle entered into possession of the residue of the land, held it until his death, taking the rents thereof, and his heirs so hold it now.
The rights of the appellant, whatever they may be, under this agreement, were expressly recognized by Pickle until the year 1859. as shown by the deposition *of Pendleton, and were in fact never disputed by him until the year 1869. When applied to then by the appellant offering to redeem, the right to redeem was denied; but from time to time afterwards he admitted the right to sundry witnesses, and actually agreed to compromise and adjust with the appellant, but could never be induced to carry his agreement into effect. By the original agreement, thus fully proved, it is very clear that it was never intended that Pickle should be the absolute owner of the land. At most, the parties only contemplated either a mortgage or conditional sale. One or the other was designed; but which, is the question to be determined.
There is a well defined distinction between a mortgage and a conditional or de-feasible sale, but it is often very difficult to determine whether a particular transaction amounts to the one or the other; and, after all, each case must be decided upon its own circumstances, and in doubtful cases the courts incline to construe the transaction fo be a mortgage rather than a conditional sale. Russell v. Southard, 12 How. U. S. R. 139; Earp v. Boothe, 24 Gratt. 368, 374, et seq. Both are conditional, and in both alike the performance of the condition according to the terms stipulated defeats the estate, and the non-performance renders it absolutely at law, and in case of a conditional sale, in equity also. While, however, the non-performance of the condition in a mortgage, at law vests the estate in the mortgaged subject absolutely in the mortgagee, equity, looking at the substance rather than the form of things, and regarding a mortgage as a mere security, acting upon the principle of granting relief against forfeitures where-ever compensation can be made, gives to the mortgagor the right to be exercised in a reasonable time, notwithstanding the breach of the condition, to redeem his property by paying to the mortgagee the amount of his debt and interest, and have his property reconveyed to *him. This right is called the equity of redemption, and is an inseparable equitable incident of every mortgage. It is wholly a creature of equity, and cannot be defeated, restrained, evaded, or in any way impaired by agreement of parties as long as the mortgage continues a security. An irredeemable mortgage is a legal solecism. Hence the expression. “once a mortgage, always a mortgage.” What is meant by this is, that whenever and as soon as a mortgage is created by the act of parties, equity at once annexes inseparably a right of redemption, independent of and paramount to the will of the parties. It is not meant, however, that after a mortgage has been once created, the mortgagee may not become the purchaser from the mortgagor of his equity of redemption, lie may become such purchaser, thus combining the legal and equitably estates, and his purchase will be valid, if, under the jealous scrutiny of a court of equity, it is shown to be for an adequate consideration, that no undue advantage has been taken of the necessities of the mortgagor, and that it is in all respects fair.
It is essential to a mortgage, that there should be a debt to be secured. It may be antecedent to, or created contemporaneously with the mortgage. If the relation of debtor and creditor exist, or is established between the mortgagor and mortgagee, so that the latter may have his action at law against the former for the amount owing, it does not matter whether the indebtedness is evidenced by a written obligation or not. The absence of a written obligation is sometimes adverted to as tending to show that a conditional or defeasible sale, and not a mortgage, was intended. This circumstance is certainly entitled to some weight, but *352 alone has no great significance. The agreement that Pickle should advance for the appellant to Davis the amount of his debt and interest, and the actual payment of the same by Pickle under the. agreement, *created a debt, and made the appellant Pickle’s debtor for the amount so advanced. There was no necessity'that Pickle should take a written obligation for the repayment of this sum, for the amount was fixed and clearly ascertained by the trust deed to Davis. The principal sum was therein accurately specified, and by computing and adding interest till payment, whenever made, the indebtedness of the appellant would be ascertained with convenience and certainty, and id certum est, quod certum reddi potest.
The negotiations between the parties have always been much looked to and regarded as important in determining whether they contemplated a mortgage or sale. Earp v. Boothe, supra. In the case at bar, there never was any treaty for sale to Pickle, either absolute or conditional. The negotiation was for an advance by Pickle for the appellant of the Davis debt and interest, and a transfer of title through Davis as a conduit to Pickle as a security for repayment of the sum advanced, and for enlarged indulgence to the appellant to enable him to make payment. If a conditional sale had been contemplated, it would seem natural and reasonable that some time should have been suggested and fixed within which the re-purchase should be completed, or the appellant lose his right. The fact that no time for repayment was fixed, tends to show, in my judgment, that an advance of money and security for it were intended, not a sale. The land as security was ample, the payment of annual interest in form of rents was provided for, and if at any time Pickle desired payment of the principal sum and the appellant were unable to make it, he had his plain remedy by bill to foreclose.
There is another circumstance in this case which has always been regarded as very potent to show that a mortgage was. intended and not a sale; and that is, the *great disproportion between the value of the land and the amount of money advanced. Russell v. Southard, supra; 3 Minor’s Institutes, 306, and cases there cited. The amount of the principal and interest of the D'avis debt advanced by Pickle was about $1,700. This was paid mostly in bonds on third parties, and a proportionately small part in money. The deed to Pickle recites the consideration as $2,300. and there is some evidence of declarations of Pickle, not admissible, however, that the bonds taken at a discount and money paid, together amounted to $2,300; but Davis says that the true consideration is not expressed in the deed, and that he only received the amount aforesaid of his debt and interest. The land is proved to have been worth at that time $3,000; so that Pickle paid only a little over one-half its value . It is not reasonable to suppose that he would have been permitted to purchase at so inadequate a price, and Davis says that Pickle would not have been allowed to buy the land, at that price, and that he was only .permitted to take it for the sum advanced because it was understood that the appellant was to repay and redeem.
The further fact, already noticed, that by express agreement Pickle was to go into possession of the greater part of the land (the residue to remain in the possession and use of the appellant,) and receive and apply the annual rents to the extinction of the annual interest on the money advanced, shows very strongly, if not conclusively, that he was not to be a purchaser, but a mere en-cumbrancer. This provision of the contract between the parties for the certain and regular payment out of the rents of the interest as it annually accrued on the money advanced, plainly implies a debt on which the interest is to be paid, and as .plainly, that the land and the rents and profits issuing from it were to be held as security for the payment of *such debt and interest. It would seem to be wholly inconsistent with the fact of a purchase.
But the great lapse of time is relied upon by the appellees in their answer to the appellant’s bill, and insisted upon by their counsel in argument here, as a bar to the appellant’s equity, even if the deed in question be a mortgage. The mortgagee and his heirs, who claim under him, have been in possession of the greater portion of the mortgaged premises from the year 1845 until this time, and unless the presumption in their favor arising from this long continued possession is satisfactorily rebutted, it must prevail against the appellant’s claim. The true doctrine upon this subject in Virginia has been laid down correctly, I think, by the accurate author of the Institutes of the Common and Statute Law. I cannot do better than to quote from this excellent treatise. After stating that the. mortgagor, in equity, has the right to redeem within a reasonable time, the author continues: “The time which shall be deemed reasonable is not definitely fixed. As long as Lhe mortgagor continues in possession no limit is imposed, and if that possession continue adversely a sufficient length of time, it amounts to an extinction of the lien. The right to redeem is liable to be limited or barred by the lapse of time only when the mortgagee has been in the uninterrupted enjoyment of the premises for a considerable period. That period has long been fixed at twenty years, by analogy to the bar of the right of entry by the statute of limitations (21 Jac. I. C. 16), according to the English cases, but according to the view adopted in Virginia, in consequence of the lapse of that time warranting the presumption of an abandonment of the equity, as of all other equities, and as in like manner it warrants even in a court of law a presumption of satisfaction of a debt, 1 Lom. Dig. 454, et seq.; 1 Tuck. Com. 110, B. II; 2 Bl. Com. 159, n. (8); Howard *v. Harris, 2 Wh. & Tud. L. Cas. (Pt. II) 425, et seq.. edi. 1877, p. 1042; Hovenden v. L’d Annesley, 2 Sch. & Lefr. 607-636; Marquis *353 of Cohlmondely v. Clinton, 2 Jac. & Walker 1, 151; Ross v. Norvell, 1 Wash. 14 * * * * * *
But whatever may be the source and ground of the limitation, it is admitted to be a mere presumption, capable of being' repelled by circumstances sufficient to satisfy the mind that in the particular case it is ill-founded. Thus not only will it be repelled by the existence of any of the impediments which would repel the bar of the statute (in Virginia, infancy, insanity, and coverture, V. C. ch. 149, sec. 15), but also by any circumstance of fraud or oppression on the part of the mortgagee tending to clogg or embarrass the redemption, and by even a slight act of the mortgagee or his representative, acknowledging the continued right of the mortgagor, such as by keeping private accounts of the profits of the estate, as if it were still redeemable, especially if kept with the mortgagor, &c., or by conveying subject thereto, or offering to purchase' it, or even by a parol recognition in conversation of the mortgagor’s right, provided it were clear and unequivocal. 1 Lomax Dig. 455, et seq.; Howard v. Harris, 2 Wh. & Tud. L. Cas. (Ft. II), 425, et seq.; 2 Minor’s Institutes, 828-329. To the authorities cited may be added Jones’ adm’r v. Comer’s ex’ors. 5 Leigh 350, et seq.; Hughes v. Edwards, 9 Wheat. R. 489, 497, 498. See also 2 Wash. on Real Prop. 558, et seq.
Besides the circumstances mentioned above by the learned author of the Institutes as sufficient to repel the presumption raised by lapse of time, there are many others; and, as stated by him, it may be repelled by any circumstances “sufficient to satisfy the mind that in the particular case it is ill-founded.” The circumstances are abundant in this case to repel the presumption. The *right of the appellant to redeem was repeatedly recognized by Pickle in conversations with the witness Pendleton between the years 1845 and 1859; by deliberate admissions afterwards made to others, and by strong implication from concessions in efforts at adjustment. There is one circumstance, which of itself, might perhaps be sufficient, under the authorities, to repel the presumption. The learned English annotators of the Leading Cases in Equity, after enumerating the circumstances mentioned in Minor’s Institutes, ubi supra, add; “The case would also be taken out of the statute by the mortgagor or his heir remaining in possession of part of the mortgaged estate. (Citing) Rakestraw v. Brewer, Sel. ch. ca. 55; 2 P. Wms. R. 511; Mos. R. 189; Burke v. Lynch, 2 Ball & Beat. 426-527. Other instances might be mentioned, &c.”
The undisputed fact in this case is, that the appellant has always been and is now in the actual ánd exclusive possession of the house and several lots of the mortgaged premises, holding possession under the original contract with Pickle, and not accounting nor bound to account for rents.
Notwithstanding the authorities cited in the Leading Cases, supra, it is said in 1 Lom. Dig. 351. citing 1 Cov. Pow. Mortg. 388, No. 1; 3 Ves. 22, that “it does not .appear to be settled, that because a mortgage is redeemable as to part of the premises, that, therefore, in no case, shall the equity of redemption be barred as to another part.” The English authorities referred to are not at hand, and, therefore, cannot be examined. It is immaterial, however, what they decide, as, independent of the effect, if any, of possession of part of the premises by the mortgagor, the other circumstances before mentioned are sufficient to rebut the presumption arising *from lapse of time in this case, and it is unnecessary to pursue our inquiries further on this subject.
If the bill in this case had been filed to establish a conditional sale under the deed absolute on its face, it would have been a question whether parol evidence would have been admissible to prove such a sale. But as this question does not, in my opinion, arise in the case as stated in the pleadings, or as made by the proofs, it is unnecessary to decide it. See what is said by the American annotators on Howard v. Harris, Wh. Tud. Lead. Ca. (ed’n 1852), top pp. 436, 437, et seq., and cases there cited.
I am of opinion that the deed under which the appellees claim, although absolute in its terms, was intended by the parties to be, and is, in fact and effect, a mortgage; and that, under the particular circumstances of this case, notwithstanding the great lapse of time which, ordinarily, would be sufficient to bar the right of redemption, the appellant is entitled to redeem in the usual manner and upon the usual terms; and consequently that the decree of the circuit court of Smythe county is erroneous and should be reversed and annulled, and the cause remanded for further proceedings to be had therein to final decree in conformity with this opinion and the principles herein declared.
If there be any error in the conclusion which I have reached in this difficult case, I yet feel sure that substantial justice will be meeted out to all the parties. The ap-pellees will get back the money their father paid, with interest, and if they lose anything, it will only be the profits of a speculation on a kinsman’s necessities, of more than doubtful propriety.
I discover that the personal representative of Philip Pickle is not a party to this suit. There is a general demurrer to the bill, but no cause specially assigned for *want of parties, and no notice was taken of the omission in argument here. He is not only a proper, but a necessary party. In a bill to redeem a mortgage in fee, after the death of the mortgagee, the personal representative of the mortgagee, as well as his heirs or devisees, are necessary parties; the latter because they hold the legal title, the former because he is entitled to receive the debt on redemption decreed, whether on payment or by sale cf the mortgaged premises. Story’s Eq. *354 Plead. § 18. The objection for want of necessary parties may be made by answer, plea, or demurrer, or at the hearing without its being made in either, or it may be made here for the first time; and whether made or not, the court sua sponte will notice the omission. Armentrout’s ex’ors v. Gibbons. 25 Gratt. 371; Dabney v. Preston’s adm’rs, Id. 838.
The decree, however, entered here, settling the principles of the case, . will be in no way prejudicial to the interests _ of the personal representatives, but otherwise. So that when the cause is remanded, as it must be, before any of the accounts in which he is interested are taken, the appellant must be required to amend his bill and make the personal representative a party defendant, unless.by his consent he be made a party, as he may be, without formal amendment of the bill for that purpose.
The decree was as follows:
This cause, which is pending in this court at its place of session at Wytheville, having been fully heard, but not determined, at the said place of session: This day came here the parties by their counsel, and the court having maturely considered (¿he transcript of the record of the decree'aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with *the record, that, although the deed from Joseph W. Davis and wife to Philip Pickle, dated the 24th day of May, 1845, conveying to the latter the tract _ of land therein mentioned, (a copy of which deed is a part of the record,) is absolute in its terms, yet said deed was, by the agreement of the appellant, the said Philip Pickle and Joseph Davis, intended to be, and was in fact and legal .effect, a mortgage upon said land to secure the payment by the appellant to the said Philip Pickle of the amount of the debt and interest owing by the appellant to the said Davis, and by the said Pickle advanced and paid to the said Davis for the appellant at his request.
The court is further of opinion, that although the said Philip Pickle and those claiming under him have been in possession of the greater portion of said land from the date of the deed aforesaid until this, time, from which long-continued possession a presumption might arise that the appellant had abandoned his equity to redeem, yet such presumption is fully repelled by the facts and circumstances proved in this cause, and the appellant is still entitled to redeem in the usual manner and upon the usual terms.
The court is further of opinion, that an account should be taken, stated and settled the' said Philip Pickle and those claiming between the appellant on the one side, and under him on the other side, in which account, the appellant should be charged with the amount of money paid and advanced for him as aforesaid by the said Philip Pickle to the said Joseph W. Davis,'and interest should be computed thereon from the time it was so paid and advanced until payment; and he should be credited by the fair rents and profits of said land since it has been in the possession of said Pickle and those claiming under him, and also with the value of any timber cut and removed, or suffered or caused to be cut and removed, *from said land by said Pickle and those claiming under him, the rents to be applied as a credit at the end of each year, first to the annual interest accrued, and if they exceed the interest, then the excess to be applied to the principal sum; and the balance ascertained to be owing by the appellant on the account so stated and settled, he should, by decree for the purpose, be allowed to pay to the personal representative of the said Philip Pickle, within a reasonable time to be prescribed in the decree; and upon such payment being made, the heirs of the said Philip Pickle should be required, at their own proper costs, by deed with covenant of special warranty, to convey said tract of land tc the appellant, or said deed may be made on behalf of said heirs and at their costs by a special commissioner to be appointed for that -purpose; and said heirs and those claiming under them should thereupon be required to surrender possession of the premises to the appellant; and if the appellant should fail to make such payment within the time so prescribed, the said tract of land should be sold by order of the court, upon a reasonable credit, and the proceeds of the sale, when and as collected, should be applied to the satisfaction of"-the balance so ascertained to be owing as aforesaid by the. appellant; and after said balance shall be so discharged, the surplus of such proceeds, if any, should be paid to the appellant.
The court is further of opinion, that before any further proceedings be had in this case in the said circuit court, after the same has been remanded hereunder, the complainant should be required to amend his bill and make the personal representative of Philip Pickle, deceased, a party defendant in the cause, unless such personal representative shall be made a party by his consent, as he may be, without filing a formal amended bill for that purpose.
*The court is .further of opinion, that the said decree of the circuit court of Smythe county is wholly erroneous; and it is therefore decreed and ordered that the same be reversed and annulled, and that the appellant recover against the appellees his costs by him expended in the prosecution of his appeal aforesaid here; and this cause is remanded to the said circuit court for further proceedings to be had therein to final decree in conformity with the opinion and principles herein expressed and declared; which is ordered to be certified to the said circuit court.
It is further ordered, that this decree be entered on the order book here, and forthwith certified to the clerk of the court at its place of session aforesaid, who shall enter the same on his order book and certify it to the said circuit court of Smythe county.
Decree reversed.