STONE'S ADM'R.
*vs*
WILLIS.

*Robertson* for appellant: *Cates & Lindsey and B. & A.
Monroe* for appellees.

CHANCERY.

Case 98.

May 4.

Case stated.

## Stone's Administrator *vs* Willis.

ERROR TO THE MERCER CIRCUIT.

*Mortgages.    Conditional sales.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

IN 1812, Elisha Stone executed to James Lillard the
following bill of sale: "Know all men by these presents,
that I, Elisha Stone, of Mercer county and State of Ken-
tucky, have this day *bargained and sold* unto James Lil-
lard, one negro woman by the name of Peggy, for the
consideration of the sum of three hundred dollars, to me

in hand paid by the same James Lillard, the receipt whereof I do acknowledge, and I will warrant and forever defend the said negro to said Lillard, from myself, my heirs, and every other person whatever, and likewise to be sound at this time, and age to be nineteen or twenty, as witness my hand and seal this 19th day of November, 1812.                    ELISHA- STONE,. SEAL.

  *Test*, JOHN J. ALLEN,
   DAVID R. REESE."

On the same day the following defeasance was executed by Lillard: "Whereas I have this day *bought* a negro woman by the name of Peggy, for which I *give* Elisha Stone $300, now if the said Elisha Stone, *himself*, shall *pay me* $300 in the course of two years, he, the said Stone, shall have the same negro *back if she be alive*; as witness my hand this 19th of November, 1812.

       JAMES LILLARD."

  *Test*, JOHN J. ALLEN,
   DAVID R. REESE."

On the 21st of March, 1828, Stone filed his bill in the Mercer Circuit Court, against Lillard and one Joseph Willis, in which he charged that the transaction was intended as a security for money loaned; that the woman had had several children, and she and they were in the possession of Willis, and were claimed by him, and prayed a redemption upon the usual terms.

Lillard and Willis filed their joint and separate answers, in which the former denies expressly, the contract as charged, and alledges that the sale was absolute, with the liberty of redemption at any time within two years, if the slave should be living. Willis admits he had possession of the woman and her children, and been so possessed for about eleven years before the institution of the suit, claiming them as his own absolute property, without notice of any claim on the part of Stone or any other, and relies upon the statute of limitation in bar of the suit.

Stone died and his suit was abated in 1830, and remained so until 1841, when a bill of revivor was filed by his administrator, alledging the death of Stone and also

STONE'S ADM'R.
*vs*
WILLIS.

of Lillard, and reviving the suit against Willis as the administrator, with the will annexed, of Lillard.

Decree of the Circuit Court.

The Circuit Court, upon the depositions and proof in the cause, dismissed the bill, and the complainant has brought the case to this Court.

We are perfectly satisfied that the contract was a conditional sale, and not a mortgage or pledge for the security of money. We are brought to this conclusion by the following considerations:

Where a slave was sold, a bill of sale given, and a writing given by vendee giving vendor the privilege to repurchase within two years *if the slave be living*, no note or other security given by vendor for the amount of the price, which was the fair value, and vendor acquiesced for 11 years, held that it was not a mortgage transaction.

1st. The terms of the written contract between the parties, show a sale and not a mortgage or security for money. The bill of sale expresses a *sale and purchase*, and the defeasance shows the same thing. I (Lillard,) have *bought*, for which I *give* $300. Now if the said Elisha Stone shall *pay* me, *himself*, in a specified time, $300, he shall *have the said negro back, if she be alive.* The terms of the defeasance by which the absolute terms of the bill of sale are qualified, show a *sale and purchase*, with the right of Stone, in a specified time, to *repurchase* or *get back* the slave, if she be alive. Nor is fraud, mistake, or other grounds alledged or proven, varying the contract from the written agreement. But on the contrary, the written terms are substantially sustained by the proof.

2nd. The consideration given is proven to be the full value of the slave.

3rd. There was no note or memorandum in writing given for the money to be refunded, or any obligation on Stone to refund it, or contract, expressed or implied, from the written terms or the proof in the cause, upon which Lillard could have coerced its re-payment. Stone *might* pay and *get back* the slave, but was not bound to pay.

4th. It may be fairly implied from the terms of the defeasance, that the risk of the life of the slave rested upon Lillard, and he was to submit to the loss in case of her death. As vendee he was liable to this risk, as mortgagee he was not.

5th. The acquiesence of Stone for so great a length of time, without the assertion of right; and the absolute claim and assertion of right on the part of Lillard and

his donee, Willis, strengthens the conclusion to which we have arrived as to the true intent of the parties and nature of the contract between them. But if the contract were a mortgage or pledge, the overt assertion of absolute right on the part of Lillard, and gift of the mother and sale of the then only child to Willis, and the absolute claim of the slaves by Willis, as his own right and property for more than eleven years before the institution of the suit, and more than twenty years before its revival, and especially as this assertion of absolute title was known to Stone, is such an adversary possession and holding as bars the complainant's right to a decree.

There is no ground to believe that either Lillard, after the expiration of the time for redemption, or Willis after he acquired possession, held the slaves in trust for the benefit of Stone. The absolute gift of the one and sale of the other to Willis, contradicts the idea as to Lillard, and the absolute exercise of ownership on the part of Willis, contradicts the idea as to him.

Willis's possession and holding were in his own right, under a claim of absolute dominion over the property, and that well known to Stone. His possession and holding were, therefore, adversary and not in trust, and after so great a lapse of time, without suit or the assertion of right, Stone or his administrator would not be entitled to a decree, if the contract were a mortgage.

Decree affirmed with costs.

*Robertson & Bradley* for plaintiff: *Harlan & Craddock* for defendant.