## B. D. LUCAS *v.* WILLIAM A. CAMPBELL *et al.*

1. SALE—*whether sale or lease.* Where a sewing machine was delivered under a writing purporting to hire the same at $5 per month, the company agreeing that when $85 was paid in such monthly advances, or otherwise, to sell and deliver the machine under a receipted bill of sale, it was *held*, that the writing showed a sale, and that the machine was liable to attachment against the purchaser.

2. Under such a sale, if the vendor regains possession before any liens attach, he will be possessed of not only the property, but the title, as against creditors of the purchaser, when property is taken in default of payment.

3. GARNISHMENT—*money in hands of attorney.* Where a recovery is had in trover for the wrongful conversion of a person s property after its attachment for his debt, and the money is collected and paid to the attorney in the action of trover, with a part of which he pays off the attaching creditor, the balance in his hands will belong to the former owner, upon which neither the party sued in trover nor the attorney will have any claim, legal or equitable, and such money in his hands is liable to be garnisheed by a creditor of the party entitled to it.

4. SAME—*costs.* Where a garnishee defends and uselessly makes costs in the defense, and fails to show any just defense, it is proper for the court to adjudge him to pay the costs of the suit. If he chooses to litigate unnecessarily, he ought to pay the costs. If he answers, stating the facts, and submits to the decision of the court, it seems that costs ought not to be taxed against him.

5. ATTORNEY'S LIEN. Where an attorney received money which was collected in a suit prosecuted in the interest of his client as a creditor, and he paid over to his client such portion of the money as belonged to him, leaving a surplus in his hands belonging to a third person, it was *held*, in a proceeding by garnishment against the attorney, at the suit of another creditor of the owner of such surplus, that the attorney had no lien upon the money so remaining, for his fee, but must look to his client for that, under his retainer.

APPEAL from the Circuit Court of McLean county.

Mr. B. D. LUCAS, *pro se.*

Messrs. HUGHES & McCART, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears, from the stipulation of the parties, that the Remington Sewing Machine Company sold to one Winsell a

sewing machine for $85, and took from him a written state-
ment that he had hired the machine at $5 per month, they to
have the privilege of taking it into possession if, on his re-
moving to another residence, he failed to give them notice,
or if he failed to make any monthly payment, but upon making
such monthly payments until the sum should amount to $85,
the machine was to be his, and the company to execute to
him a bill of sale. At the time of the purchase, Winsell paid
$5, but never paid any more.

About three months afterwards Winsell left the country, but
did not take the machine with him, but left it in the house he
removed from, the possession of which he still held. When he
left he owed one Washburn $15.50, and $100 to appellees. The
former sued out an attachment, and placed it in the hands of
appellee Wm. A. Campbell, who levied the writ on the machine,
and took it into possession. Thereupon the sewing machine
company brought a suit in replevin, took the machine from
Campbell's possession, dismissed the replevin suit, and refused
to return the machine. Campbell then brought suit in replevin,
but the property not being found, the suit was converted into an
action of trover. On a trial, judgment was rendered against
the company for $85 and costs. An execution was issued on
the judgment, and the money was paid by the company to the
sheriff, and it was thus satisfied. Appellant, who was the
attorney for Washburn, received the money from the sheriff,
and paid Washburn the amount of his claim for which he
brought his attachment suit, and holds the balance. Appel-
lees then sued out a writ of attachment from a justice of the
peace, against Winsell, but he was not found, and appellant
was served as a garnishee, but made no defense in that court,
and a judgment for $64.20 was rendered against him as gar-
nishee, and he appealed to the circuit court, and on a trial by
the court with the consent of the parties, the court, on the
agreed facts, found for plaintiffs, and assessed the damages at
$66.20, and rendered judgment for the same, and defendant
appeals to this court.

If this machine was the property of Winsell, under the instrument he gave the company, there is nothing to show that he was ever divested of the title until the recovery was had in the trover suit against the company. The written instrument is this:

"*Bloomington, Ill., June* 16, 1874.

Received from the Remington E. Company, No. 1 Remington E. Sewing Machine Company machine No. 41,407, on hire at $5 per month, payment to be made monthly in advance. I hereby agree to give the company notice of any change of my residence or place of business, within three days after such change, and to make punctual payment of the said monthly rent, under the penalty, in case of my failing in either of these agreements, of forfeiting all my interest to said machine under this agreement; hereby expressly waiving, in either such case, all legal notices, formalities and proceedings on the part of the said company to make entry and regain possession of the said machine; the said company agreeing, however, that when the sum of $85 shall have been paid for the use of said machine by said advance and monthly payment, or otherwise, that they will then, in consideration of said $85 paid, sell and deliver to me said machine, with a good and effectual receipted bill of sale thereof."

Considerable ingenuity has been employed to give this sale the form and effect of a mere lease. When the entire context is considered, it seems to be perfectly apparent that it was a sale of the machine on monthly payments, until the price was realized, and then the title to vest in the purchaser.

We are aware of no usage in any department of business where the property leased becomes, by agreement, that of the lessee at the end of the term. Such a custom or usage prevails in no department of business outside of the sale of these machines and a few others, so far as our knowledge extends. Such companies are not believed to be so generous as to give their machines even to the most needy and meritorious. This form of instrument seems intended as a substitute for a chat-

29—88 ILL.

tel mortgage, and to create a lien on the machine sold, without the expense or inconvenience of the execution of a chattel mortgage, and like such an instrument, to give power to the company to resume the possession on default in the payment of any installment, and to protect the property from sale, lien or incumbrance by the purchaser or his creditors. But this can not be held to be a chattel mortgage, or a substitute for one, as none of the requirements of the law regulating such instruments have been observed in its execution. The machine, then, was the property of Winsell when it was attached. Being the property of Winsell, the sewing machine company converted his property when they replevied it, and appropriated it to their own use. Had they done so before Washburn's lien attached, they would, no doubt, as to creditors as well as Winsell, have become possessed of not only the property, but the title. But Washburn's attachment became a lien on the property, and their replevying it was wrongful, as they were adjudged on the dismissal of their suit. On its dismissal, they became liable to restore the property or to pay Washburn's debt against Winsell, but they did neither. Thereupon suit was brought either by Campbell, the constable, or by Washburn, but which is not apparent from the transcript and arguments. As we understand the transcript, it was Campbell sued the company, but the briefs seem to indicate that it was Washburn. But it does appear that a judgment for $85 was recovered against the company; that it was collected, and that appellant, who was Washburn's attorney, received money from the sheriff and paid to Washburn the amount of his claim and retains the balance. Now, the machine company has no possible claim to this money, as their rights were tried and they adjudged to pay it, for converting Winsell's property to their use. Washburn has no claim to it, because he has received all of his demand against Winsell. Appellant has established no claim, not even the slightest, to appropriate it to his use. He has shown no claim, much less a lien on it,

against Winsell or any other person. Then how can he hold it, having neither legal nor equitable rights?

On the contrary, Winsell owned the machine, and the company converted his property, and this money was recovered in consequence of the invasion of his, and the rights of Washburn. Had the recovery been based on the loss of Washburn alone, and the wrong they did to him, it would have been limited to the amount of his claim. But it went further, and embraced Winsell's rights of property over and above the claim of Washburn, and all beyond that amount was equitably his, and subject to the garnishee process of appellees, and the judgment of the court below was warranted by the evidence.

Nor does the fact that appellant claimed a fee of $20 matter, as that became no lien on the funds. For its payment he must look to his clients under his retainer. Having no lien on the fund, he has no right to have his fee deducted. Nor has he the right to have the costs he has uselessly made in defending this garnishee proceeding deducted from the fund in his hands.

The 27th section of the chapter entitled "Garnishment," (R. S. 1874, p. 554,) makes it discretionary with the court to allow or apportion costs in such cases; and inasmuch as appellant contested appellees' right to the fund without any legal grounds, it was not an abuse of that discretion to require him to pay the costs he thus occasioned. Had he answered that he had the money in his hands, and set forth all of the facts as they existed, and submitted to the decision of the court, we can not suppose the court would have taxed costs against him. But he did not appear before the justice of the peace, and make an answer, but made default, and then appealed to the circuit court, and there failed to interpose a legal defense, thus largely increasing the costs. This section was obviously adopted to prevent garnishees from consuming the fund in their hands by useless litigation. If a garnishee chooses to

litigate unnecessarily, he, like others, must pay for the expense he thus incurs.

No error is perceived in this record, and the judgment of the court below is therefore affirmed.

*Judgment affirmed.*