## Staunton.

McComb v. Donald's Administrator, &c.

SEPTEMBER 23d, 1886.

1. CONDITIONAL SALES.—Where vendor agrees to sell to vendee personal property for a price agreed to be paid at a future time, and delivers possession, but expressly retains title until payment, it is a conditional sale; and though by parol or by an unrecorded instrument, it is valid as against vendee's creditors or subsequent purchasers, with or without notice. *O. D. Steamship Co.* v. *Burckhardt*, 31 Gratt. 664.

2. IDEM—*Chattel mortgage—Registry acts.*—Such transaction, not being chattel mortgage, but a conditional sale, does not come within the scope of Code 1873, ch. 114, sec. 5.*

3. IDEM—*Case at bar.*—Vendor, by contract which was, but need not have been, in writing, conditionally sold all his property that had been used by him and the vendee, as partners in business, but retained, until payment, the title to only a designated part thereof: HELD: Under the circumstances, the contract should be construed to intend the retention of the title to the whole.

4. APPELLATE PRACTICE.—Objections which might be affected by extraneous evidence, and which were not made below, cannot be made for the first time in this court. *Simmons* v. *Simmons*, 33 Gratt. 557.

Appeal from decree of circuit court of Augusta county, rendered 11th June, 1885, in the cause of *Donald's Adm'r* v. *Donald's Creditors et als.* This suit was brought by R. P. Bell, administrator of W. A. Donald, to have the court construe and determine the effect of a contract made 4th April, 1881, by McCoy & Saunders with W. A. Donald, which recited that the

*See, however, Code 1887, sec. 2462.

two former were the owners of certain chattel property, and that they sold it, by an unrecorded instrument, to him at an agreed price, but retained the title until that price should be paid. Possession having been given to Donald under this contract, he subsequently sold the same to J. K. McComb.

The circuit court having decreed adversely to the latter, he appealed to this court.

*Hudson & Patrick*, for the appellants.

*A. F. Robertson, T. C. Elder* and *George M. Cochran, Jr.*, for the appellees.

Hinton, J., delivered the opinion of the court.

The great question in the case is, whether an unrecorded contract of conditional sale of personal property is valid as against purchasers from the vendee, without notice. This inquiry arises out of the following state of facts:

For some years prior to the 4th of April, 1881, W. A. Donald and the firm of McCoy & Saunders, of the city of New York, had been engaged in operating some manganese mines in the county of Augusta, in this State. At the last-mentioned date the parties had an agreement in writing by which their relations as partners were severed, and McCoy & Saunders agreed to sell all their interest in the machinery, tools, improvements, ore, &c., to the said Donald, for the sum of $18,788.48, to be thereafter paid, as provided in said agreement; but expressly stipulating "that the title to said machinery, tools and improvements shall not be deemed to vest in the said Donald until the present indebtedness and interest are fully paid." Subsequently, Donald conveyed to the appellant, James K. McComb, one Frick engine, a Rahm & Hunter engine, one

team of four mules, wagon and harness, and one team of four horses, wagon and harness, for the consideration of $1,300. In February, 1882, Donald died, leaving his bond to McCoy & Saunders for $18,788.48, almost wholly unpaid; when, in a suit brought by his creditors, to have his estate administered, the circuit court decreed that the title to the property, the subject of the contract of April 4th, 1881, of which the property which was the subject of the bill of sale from Donald to McComb was held to be a part, did not pass to Donald, and that consequently Donald could not make a sale of the same to McComb or to any one else that would be valid against McCoy & Saunders. And it is from that decree that McComb has taken this appeal.

Now, that the contract between Donald and the firm of McCoy & Saunders was a conditional sale seems to us to admit of no doubt. Jones on Chattel Mortgages, secs. 8, 26; *Ellison* v. *Jones,* 4 Ired. 48; *Ballew* v. *Sudderth,* 10 Ired. 176; *Brewster* v. *Baker,* 20 Barb. 364; *Grant* v. *Skinner,* 21 Id. 581; *Herring* v. *Hoppock,* 15 N. Y. 409; Benjamin on Sales, sec. 320, note (*d*). And in such cases, the courts have very generally held, in accordance with the common law principle, which construes contracts, not in contravention of the law, according to the intention of the parties, that the payment of the purchase money is a condition precedent on the part of the buyer to the vesting of the title, and that the property in the goods agreed to be sold does not pass to the buyer until that condition has been fulfilled. 2 Schouler's Per. Prop., sec. 294, ed. 1884; Benjamin on Sales, sec. 320, note (*d*); *Coggill* v. *Hartford and New Haven R. R. Co.,* 3 Gray, sec. 48; *Ballard* v. *Burgett,* 40 N. Y. 315; *Forbes* v. *Marsh,* 15 Conn. 394; *in re* Binford, 3 Hughes C. C. R. 295; *Duncan* v. *Stone,* 45 Vt., 118. And if such sales are held to be valid, and they have been held to be so, as between the original vendor and vendee, in Massachusetts,

Connecticut, New Hampshire, Vermont, Maine, Missouri, Indiana, Iowa, Ohio, Michigan, Georgia, New Jersey, and with some lack of uniformity, in New York also, it seems to us inevitable that they must be valid as against purchasers from, and creditors of, the vendee; and that the decided weight of American authority is in favor of this view. *Forbes* v. *Marsh, supra; Paul* v. *Reed,* 52 N. H. 136; *Cole* v. *Berry,* 42 N. J. L., 308; *Coggill* v. *Hartford, &c. R. R. Co.,* 3 Gray 548; *Sage* v. *Slentz,* 23 Ohio St. 1; *Stevens* v. *Brennan,* 79 N. Y. 254; *Thorpe* v. *Fowler,* 57 Iowa 541; 2 Schouler's Per. Prop. 299, 300.

By the terms of these contracts, and the intention of the parties thereto, nothing passes to the vendee but the bare possession before the sale has been consummated by the performance of the condition. Until that time, the property remains in the vendor. Unless, therefore, the vendee can convey what does not belong to him, it is impossible that he can convey the title to his sub-vendee; and this accords with the common law, that a man who has no authority to sell, cannot, by making a sale, transfer the property to another. *Dyer* v. *Pearson,* 3 B. and C., 42.

It is urged, however, by the advocates of the contrary doctrine, that as possession is one of the evidences of title, the vendor, who has furnished the vendee with *this evidence* of ownership, and thereby has given him a false credit, should suffer for the fraudulent acts of such vendee, rather than the purchaser, upon the principle that where one of two innocent persons must suffer from the fraud of a third, the law should fall on him who has enabled such third person to do the wrong. But the ready and conclusive answer to all this, apart from the consideration that there is "no good reason or equity in placing the burden of a fraudulent sale by a vendee, in violation of the condition on which he received the property, upon a *bona fide* vendor, rather than upon a *bona fide* purchaser,"

would seem to be that the creditors and purchasers, in such cases, are not, in the legal sense of the term, *innocent* creditors or purchasers.   Mere possession is not, and never has been held to be, *proof* of property.   It is only one of the three elements of title.   And it is within the common experience of every one, that the possession of personal property is often in one person while the title is in another; as for example, in a case of lending or hiring, or where materials have been left with a manufacturer to be made up; and yet, in each of these cases, the law, as well as the dictates of common prudence, requires that third persons, before purchasing, shall inquire in what capacity his vendor holds the property, whether as buyer, borrower, hirer, or in some other capacity; and if the purchaser fails to do his duty in this respect, then justice requires that the loss should fall upon his own, and not upon another's head.

Again, the contracts of hiring and lending and the like are confessedly good.   If, then, the argument we have just been answering be sound, it ought to apply equally to contracts of this character as to contracts of conditional sales, since exactly the same reasons exist for sustaining the validity of contracts of the one kind as of the other.   In each case, the property is *apparently* in one person, while, *in fact*, it is in another; each is a transaction in the usual course of business, and there seems to be equally as much necessity, so far as the interests of society are concerned, for the one as for the other.

The same reason does not exist in cases of conditional sales, for making the property of one man liable for the debts of another, in whose hands it may be found, as in cases where the owner has sold or mortgaged to another property once possessed by him and yet retained possession of it, and, con- seqently, the rule of law should be different.   For, whereas, in the former case, the change of possession at once puts third

persons on inquiry as to the title, in the latter case, there is not given to the world the usual evidence of a change of title, viz: possession, and there is nothing to put third persons upon inquiry. They have the right, therefore, to presume that the title remains with the vendor or mortgagor, as the case may be. In the last case, too, the retention of possession, after an absolute sale, is properly regarded as a badge of fraud; yet, even in such a case, since the case of *Davis* v. *Turner*, 4 Gratt. 423, this presumption is not conclusive, but may be rebutted by proof.

This reasoning it may, perhaps, be not improper to add, has no application to cases where a prior incumbrancer or lienor has, by his failure to comply with the registry laws, enabled another to perpetrate a fraud, nor to cases where the vendor can be shown to have put the original vendee in possession of property and to have clothed him with the *indicia* of ownership, *in order* to give him a fictitious credit; for, in the first case, the negligence of the lienor or incumbrancer is the proximate cause of his own loss; and in the second case, the vendor, being a party to the fraud, would be estopped from setting up any title to the property. We think, therefore, that without pursuing the subject farther, we may safely say that the contract of the 4th April, 1881, between Donald, and McCoy and Saunders, in the absence of a statute requiring such contracts to be recorded, is valid as against both creditors and subsequent purchasers. *Old Dominion Steamship Co.* v. *Burckhardt*, 31 Gratt. 664; Barton's Chy. Pr., 2d vol., pages 950–954.

It is argued, however, for the appellant, that this contract is void under section 5, chapter 114, Code 1873; but after a careful examination of the provisions of that section, we think otherwise. This contention is founded mainly upon the assumption that the contract of April 4, 1881, is a chattel mortgage, and not a conditional sale.

In *Robertson* v. *Campbell & Wheeler*, 2 Call, 421, Judge Pendleton says: "It is often a nice and difficult question to draw the line between mortgages and conditional sales. But the great *desideratum*, which this court has made the ground of their decision, is, whether the purpose of the parties was to treat of a purchase, the value of the commodity contemplated and the price fixed; or whether the purpose was a loan of money, and a security or pledge for the repayment intended."

In *Earp* v. *Boothe*, 24 Gratt. 374, Christian, J., speaking for the court on this same subject, said: "Generally speaking, the difference between them is that the one is a security for a debt, the other a purchase for a price paid, to become absolute in a particular event; or a purchase accompanied by an agreement to resell upon particular terms."

And in Jones on Chattel Mortgages, sec. thirty-three, the author, after saying that wherever it appears that the parties intended a conditional sale, and not a mortgage, the instrument will be so construed, says: "Notwithstanding the leaning of the courts in favor of construing an instrument, which leaves the intention of the parties in *doubt*, to be a mortgage rather than a conditional sale, there is no difference in point of law between a sale for a price paid, or to be paid, to become absolute on the happening of a particular event, and a purchase accompanied by an agreement to resell upon certain agreed terms. In both cases the sale is to be regarded as conditional, and if the condition which is to defeat it be not promptly performed, in the one case the title will not vest in the vendee, and in the other it will be divested." To the same effect is the current of authority. In view of these principles it is, as we have before said, perfectly apparent that the contract in question is a contract of conditional sale.

Again, this contract is not affected by the provisions of sec. five, ch. 114 of the Code, which makes mortgages and deeds of

trust void as to creditors and subsequent purchasers without notice, as the *phraseology of the act* shows. The words are: "Every deed conveying any such real estate or term, every deed of gift, or deed of trust or mortgage conveying real estate or goods and chattels, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such contract or deed may be." And as section three of the same chapter does not invalidate the classes of contracts mentioned therein, unless the possession is separated from the property for at least five years, it is unnecessary, and therefore improper, to inquire whether it applies to cases of conditional sales.

And this brings me to consider the only question about which I have had any difficulty; and that is, whether McCoy & Saunders are entitled to claim, under the aforesaid contract, as their property, anything more than they have in express terms retained a title to. The contract recites: "Whereas, prior to April 4, 1881, the said McCoy & Saunders have been working on joint account with said Donald a manganese-ore mine, at said Waynesboro, under the name of The Crimora Mining Company, and the tools and machinery used in such mining and the ore obtained is the property of the said McCoy & Saunders, and the said McCoy & Saunders are desirous of selling all *their* right, title and interest in and to the said tools, machinery, improvements and supplies, also the ore on hand, as the same stood on said April 4, 1881, and the said Donald is desirous of purchasing the same; and whereas an account has been stated between the parties, a copy whereof is hereto annexed, whereby it appears that the interest of said McCoy & Saunders in the property—viz: machinery, tools, improvements and supplies, ore on hand, accounts, &c.—were,

on said April 4, 1881, $18,788.48, made up and arrived at, as appears in said annexed account."

And the first paragraph of the agreement reads as follows : "1st. The said McCoy & Saunders agree to sell, assign and make over unto the said Donald all their right, title and interest in and to the machinery, tools, improvements, supplies, ore on hand, and in and to all the lease of the said mine heretofore operated as above mentioned, and in and to all other property belonging to the parties hereto, or any of them, for the price of $18,788.48."

Now, from this language, it seems certain that McCoy and Saunders claimed as their own property, and sold to Donald all the property of every description that was on hand on the 4th April, 1881. But when they come to retain the title to said property, they only say: "The title to the said *machinery, tools and improvements* shall not be deemed to vest in said Donald until the present indebtedness and interest are fully paid."

But, upon reflection, I am satisfied that it was the manifest intention of the parties that the title to the whole should be retained; and as it was wholly unnecessary that the contract should have been reduced to writing, that we should construe the words machinery, tools and improvements as a general designation of all the property sold.

As to the question whether McCoy & Saunders, in view of the fact that there had previously existed a partnership between themselves and Donald, sold the whole, or one-half of the property mentioned in the contract, we do not regard it as open upon the record, because the contract recites that all the property was the property of McCoy & Saunders, and there is not a particle of testimony in the record to impeach the *bona fides* of that statement or the fairness of the sale.

As to the other objections, we are of opinion that they are

such as might be affected by extraneous testimony, and should have been raised by exceptions in the lower court, and therefore cannot be made for the first time here. 2 Rob. Prac. (old) 383; *Peters* v. *Neville*, 26 Gratt. 549; *Simmons* v. *Simmons*, 33 Gratt. 557.

Upon the whole, therefore, we think the decree of the circuit court of Augusta county is right and must be affirmed.

DECREE AFFIRMED.