RODGERS *v.* WHITEHEAD *et al.*

[89 So'th. 779. No. 22018.]

1. SALES. *Contract retaining   ̩e in seller held not to provide that seller's taking on defaul. should be in full satisfaction of debt.*

A stipulation in a contract of sale that "It is further agreed and understood that the title to the sawmill and appurtenances thereto belonging shall remain in the party of the first part [the seller], and in case the parties of the second part [the buyers] shall fail to meet any of . . . . . . the conditions and agreements, the party of the first part can take charge of said property and dispose of same for the balance due on the purchase price," does not constitute an agreement that such property shall be taken in full satisfaction of the debt; and the seller, in case the property does not bring enough at a sale to pay the debt, may sue for and recover the balance due.

2. TRIAL. *Where evidence conflicts on a material issue, a peremptory instruction is error.*

Where the evidence is conflicting on a material issue, it is error to grant a peremptory instruction.

APPEAL from circuit court of Winston county.
HON. T. L. LAMB, Judge.

Suit by S. S. Rodgers against Walter Whitehead and another. Judgment for the defendants, and the plaintiff appeals. Reversed and remanded.

*H. H. Rodgers,* for appellant.

Now, in the first instance, the evidence for the appellees and the evidence for the appellants make up a sharp controverted issue and could not have been decided other than by the jury. That all questions of fact, where the issue is sharply drawn or where witnesses testify for the plaintiff sustaining his contention and for the defendant sustaining his contention, then it must be submitted to the jury for they are the only arbiters that can weigh and consider the evidence upon the facts submitted.

All the authorities hold uniformly that the facts in a cause are to be decided by the jury and defines a jury to be "a body of men selected in the manner prescribed by law and sworn to declare the facts in the case as they appear from the evidence presented." 12 Am. and Eng. Ency. of Law, page 319; 12 Ency. Pleading and Practice, 237; *Bowers* v. *Automatic Music Co.,* 74 So. 774.

Upon the next proposition under this contract as shown in pages 4 and 5, can a cause of action be bottomed on the terms of this contract?

First, it is a contract for seventeen hundred dollars, three hundred dollars having been paid on same, leaving a balance of fourteen hundred dollars and in the terms of said contract, terms of payments, it says that the parties of the second part agree and promise to deliver ten thousand feet of No. 2 and better lumber to party of the first part on the first and fifteenth of each month at Perry-Frasier's tramroad for and at the sum of twenty-two dollars per thousand, or if delivered at Noxapater, Mississippi, for the sum of twenty-five dollars per thousand feet; and parties of the second part agree and bind themselves to begin on June 1, 1920, to delivering said lumber and agree to deliver forty thousand feet by August 1, 1920.

The proposition that the party of the first part or his assigns or this appellee cannot legally hold the parties of the second part for nothing more than this property is perfectly absurd when it is fixed in dollars and cents at

the sum of seventeen hundred dollars.   That means that
this price is the agreed price and that it was sold for sev-
enteen hundred dollars and that the parties of the second
part owed the sum of seventeen hundred dollars and the
sum is fixed in dollars and cents.   There would have been
no need of fixing any sum whatever if the property was
only to be liable for the sale and there would be no personal
liability.   The contract taken as a whole shows conclu-
sively that it was a sale at a fixed price and could only
be considered as a price certain and that the liability of the
parties of the second part at the consummation and sign-
ing of this contract was seventeen hundred dollars and
we submit the following authorities:   Third Am. and Eng.
Ency., page 895; *Bowers* v. *So. Automatic Music Co.*, 74 So.
774; *Jones* v. *Mississippi Farm Co.*, 76 So. 880; 80 So. 383;
2 Miss. 736; First Miss. Digest, page 557; 48 So. 966; 38
Miss. 280; 35 So. 828.

*C. L. Hester, J. A. Flowers* and *H. H. Rodgers*, for ap-
pellant.

Counsel for appellees, in their brief, cite 12 C. J., page
520, section 481, for the rule of construction followed by
courts in construing contracts, but we must admit our in-
ability to see wherein this authority tends to support their
contention.   If it was the intention of the parties to said
sale contract, to condition said sale so that the seller would
be limited to the property conveyed for the amount of
the purchase money, this would have been expressed in
such terms as to admit of no doubt as to what was in-
tended.

If the contention of appellees were correct, the con-
verse of the proposition would certainly be true and on
this theory of the case, the seller of the mill would have
had the right to respossess himself of the same, although
the entire purchase price less ten dollars, had been paid
by the purchasers, which is monstrous to think that any
parties ever intended such in their contracts.

The law of this case is announced in the case of *Dederick
v. Wolfe*, 68 Miss. 506, 9 So. 350. The facts of this case
are as follows: "Dederick sold to Wolfe a hay press for
the sum of four hundred and fifty dollars, taking in pay-
ment therefor three notes, of one hundred and fifty dollars
each payable at several future dates, the title to the press
being retained in Dederick till all notes were paid. Two
of the notes were paid, but default was made as to the last
note when under the contract of sale the press was adver-
tised and sold, and Dederick became the purchaser, but at
a price that still left a balance due on the last note, on
which he brings this suit against Wolfe, the maker, for
such balance. Judgment was rendered in favor of Wolfe
below, from which Dederick appealed. Held that, where
the note was not paid, the fact that the seller advertised
and resold the chattel, which he purchased for a sum which
still left a balance due on the note, will not preclude
his recovery of such balance from the purchaser."

The appellees in the present case promised to pay the
sum of seventeen hundred dollars for the mill, absolutely
and without condition, thus it seems that the case of
*Dederick v. Wolfe*, covers the present case like a blanket.
Quoting from the decision in *Dederick v. Wolfe*: "It would
be a most unreasonable interpretation of the contract to
hold that Dederick's taking possession of the press was
an abandonment of his claim to be paid what had been
promised, and not paid. There is no express provision to
that effect, and to give such effect to Dederick's act is to
cause a forfeiture of his right to be paid in full, at all
events, as promised by the buyer; while the other view does
justice to both parties, according to their contract, by al-
lowing the seller what he was promised and the buyer
what was purchased and treating the press, as it was in-
tended to be, as a security for the payment of the stipulated
price." ...........................................................................................
*Burnley v. Tufts*, 66 Miss. 48, 5 So. 627, supports the con-
tention of appellant in the present case. In this case, de-
fendant bought a soda fountain from plaintiff, giving him

notes payable one each month, expressing the consideration, and stipulating that the title to the fountain did not pass till all the notes were paid.  Defendant's store burned after he had received possession of fountain and paid several of the notes, and the fountain was destroyed.  Held, that he was none the less liable on the unpaid notes.  The contract made was a lawful one, and imposed upon the buyer an absolute obligation to pay.  To relieve him from this obligation, the court must make a new agreement for the parties instead of enforcing the one made, which it cannot do.

In the case of *Ross-Meehan Brake Shoe Foundry Co.* v. *Pascagoula Ice Co. et al.,* the court said: "The right of the seller of personal property to make a conditional sale thereof, reserving title until payment of the purchase price, is too firmly settled in this state to admit of controversy, citing *Duke* v. *Shackleford,* 56 Miss. 552; *Burnley* v. *Tufts,* 56 Miss. 48, but the reservation of the title is but as security for the purchase price and if the property is recovered by the seller, he must deal with it as security and with reference to the equitable rights of the purchaser.  Citing *Duke* v. *Shackleford* and *Dederick* v. *Wolfe, supra,* and *McPherson* v. *Lumber Co.,* 70 Miss.  649, 12 So. 857, and other cases.  The case of *Ross-Meehan Brake Shoe Foundry Co.* v. *Pascagoula Ice Co.,* is reported in 72 Miss. 615, 18 So. 364.

*McPherson* v. *Acme Lumber Co.,* 12 So. 857, a Mississippi decision, holds that the seller of personal property has the right to repossess himself of the property where the title has been retained in himself as security of the debt, and must apply the money received from the sale of such property to the payment of the debt.

Thus it seems that the only way by which the seller of personal property who has retained title to the property in himself until the purchase price is paid, as security for the purchase money, can subject said property to the payment of the indebtedness, and at the same time exercise due regard toward the equitable rights of the purchaser, is

to repossess the property, and after publishing notice of the time, place and conditions of sale, sell it at public auction to the highest bidder. Any other method would oftentimes work great injustice on the rights of the purchaser. This is the rule our courts have followed, and it is by all means the safe and sane rule.

*Edward M. Livingston,* for appellee.

The only question considered by the court in passing on the motion for a peremptory instruction was a construction of the contract. There were no sharply controverted issues of fact involved, but it was simply a question of law, and an interpretation of the meaning of the contract. The testimony plainly shows that appellees offered to deliver the machinery in question to appellant upon demand being made, and even pointed all the machinery out to appellant and told him that he could take the machinery in settlement of the balance due thereon according to the terms of the contract of sale.

In paragraph 6 of the contract in question is found the following language: "It is further agreed and understood that the title to said saw mill and appurtenances thereto belonging shall remain in the party of the first part and in case the parties of the second part should fail to meet any of the foregoing conditions and agreements the party of the first part can take charge of said mill and appurtenances thereto belonging and dispose of same for the balance due on the purchase price of said mill.

The section just above quoted makes provision for appellant, or rather for W. W. Hickman, to do the very thing that was done, and the contract nowhere makes any provisions for a judgment to be rendered against these appellees for any balance over and above the value of the machinery. The appellant simply had a writ of seizure issued, seized and sold his own property, which was constructively in his possession, which had been pointed out and turned over to him by appellee, W. R. Whitehead. Rodgers could

take no greater rights under the contract than Hickman had, and it is clear that the only right Hickman had was to take charge of the property and dispose of it for the balance due on the purchase. The contract is very explicit in its meaning fixing the time, conditions and terms of payment of the several installments for the purchase money. The contract does not provide that the machinery may be sold or disposed of and the proceeds applied on the balance due, but says for the balance due, which seems to us to be clear in its intent and meaning.

The court can never make contracts for people, but can only construe them after they have been made, and in so construing a contract the intention of the parties must be drawn from the words of the instrument, and if, in view of the language used, it is clear and explicit, the court must give effect to it.

Unless the parties to a contract, dealing with the subject-matter, by their conduct modify or change the contract originally made, or act in reference to it so as to make it inconsistent for one to claim or rely on the contract contrary to his agreement and stipulations, it must be enforced as written. *Jones* v. *Mississippi Farms Co.,* 76 So. 880.

Further a court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language, but will enforce the contract according to its terms. 13 Corpus Juris, page 520, sev. 481.

We can see no application of the authorities cited by counsel for appellant, to the law in this case; on the other hand we do think the authorities above cited speaks the law that governs the case. We submit that the lower court committed no error and the judgment thereof should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

In May, 1920, the appellees and one W. W. Hickman entered into a contract by which Hickman sold a sawmill outfit to the appellees. The contract in full reads as follows:

"State of Mississippi, Winston County.

"This contract, made and entered by and between Dr. W. W. Hickman, party of the first part, and W. R. Whitehead and Joe Sullivan, parties of the second part, witnesseth: That whereas the party of the first part has this day sold to parties of the second part the following described property, to-wit: One sawmill engine and boiler and appurtenances thereto belonging, known as the R. M. Wilson sawmill. The purchase price of said mill being the sum of seventeen hundred dollars which is to be paid as follows:

"The parties of the second part agree and promise to deliver ten thousand feet of No. 2 and better lumber to party of the first part on the first and fifteenth of each month at Perry-Frasier tramroad for and at the sum of twenty-two dollars per thousand, or if delivered at Noxapater, Miss., for the sum of twenty-five dollars per thousand feet; and parties of the second part agree and bind themselves to begin on June 1, 1920, to delivering said lumber and agree to deliver forty thousand feet by August 1, 1920.

"Parties of the second part agree to deliver sufficient lumber to finish paying the sum of eight hundred and twenty dollars at the market price locally.

"It is further agreed that said lumber is to be delivered subject to the check of the party whom the party of the first part may sell.

"It is further agreed and understood that the title to said sawmill and appurtenances thereto belonging shall remain in the party of the first part and in case the parties of the second part should fail to meet any of the foregoing conditions and agreements the party of the first part can take charge of said mill and appurtenances thereto belonging and dispose of same for the balance due on the purchase price of said mill.

"It is further agreed and understood that the parties of the second part can pay the balance due on said machinery of eight hundred and twenty dollars on August

1, 1920, provided they have met all payments due up to said date.

"It is further agreed and understood that said amount of seventeen hundred dollars, the purchase price of said machinery, is to bear six per cent interest from date until each of said payments are paid in full.

"It is further agreed that the party of the first part is to have the use of said machinery free of charge to cut up what logs the said party of the first part now has on the mill yard.

"Witness our hands, this the —— day of May, 1920.

"W. H. Hickman,

"W. W. Whitehead,

"Joe Sullivan.

"Parties of the Second Part.

"Witnesses:

"No acknowledgment before an officer needed.

"Your other contract is not full enough.

"Brantley.

"Nov. 22, 1920. I hereby transfer this paper to S. S. Rodgers without recourse for a valuable consideration.

"W. W. Hickman."

Three hundred dollars was paid to Hickman on this contract, and on November 22d it was assigned to the appellant without recourse. Thereafter the appellant made demand upon the appellees for the balance due. The money was not paid, but the appellees contended that the appellant agreed to take the property back in satisfaction of the indebtedness unpaid, and that this was agreed to, but that the appellant did not have the contract with him, and it was agreed that they would meet at Noxapater the following Saturday, when the appellant would redeliver the contract to the appellees, and that when they met in accordance with the agreement that the appellant refused to take the property in full satisfaction of the debt, unless the appellees would permit him to take certain parts of the machinery which had been purchased by them subsequent to the purchase from Hickman of the property de-

scribed in the contract. There is a dispute between the appellant and the appellees as to what took place at each of the places where the conversations claimed by the appellees took place. Subsequent to this conversation the appellant had a writ issued out of the circuit court for the seizure and sale of said property to satisfy an indebtedness claimed under the said contract of fourteen hundred dollars, and the sheriff seized the property and sold the same under said writ, whereat the appellant became the purchaser at and for the sum of three hundred dollars. Thereafter the appellant brought suit on the contract for the balance due.

The defendants filed a plea of nonindebtedness, and gave notice under the general issue that they would prove the agreement above indicated, that the property was to be taken in full satisfaction of all liability on the contract. The testimony for the plaintiff was that the agreement to retake the property for the debt embraced the property as it was then situated, including the fixtures put to the property by the defendants after the purchase under the contract from Hickman; while the defendants contended that the agreement was that the plaintiff would take the property sold under the contract in full satisfaction. There was a peremptory instruction for the defendants, and judgment entered thereon, from which this appeal is prosecuted.

It is contended here that the clause in the contract, "It is further agreed and understood that the title to said sawmill and appurtenances thereto belonging shall remain in the party of the first part, and in case the parties of the second part shall fail to meet any of the foregoing conditions and agreements, the party of the first part can take charge of said mill and appurtenances thereto belonging and dispose of same for the balance due on the purchase price of said mill," constitutes a contract on the part of Hickman and his assignee, the plaintiff, to take the property in full satisfaction of the debt in case the purchase price or any part thereof was not paid. We do not think

this contention can be maintained. In our opinion the title was reserved as security for the payment of the debt, and was not a contract to take it in the satisfaction of the debt. If the contract was to be taken as a whole, we think it manifest that Hickman sold absolutely the property, reserving title as security, and this is manifest in the concluding paragraphs of the contract. We think this conclusion is supported by decisions of this state. *Burnley* v. *Tufts,* 66 Miss. 48, 5 So. 627, 14 Am. St. Rep. 540; *Dederick* v. *Wolfe,* 68 Miss. 500, 9 So. 350, 24 Am. St. Rep. 283; *Ross-Meehan Brake Shoe Foundry Co.* v. *Pascagoula Ice Co.,* 72 Miss. 608, 18 So. 364.

The judgment will therefore be reversed, and the cause remanded.

*Reversed and remanded.*