Simon Horvitz (Substituted as Complainant for Herbert Levy), Appellee, v. Harry Leibowitz et al., Defendants.
Appeal of Stover Company, Inc., Intervening Petitioner, Appellant.

Gen. No. 36,804.

Heard in the second division of this court for the first district at the June term, 1933. Opinion filed March 6, 1934.

DANIEL D. KAUFMAN and TAYLOR, MILLER, BUSCH & BOYDEN, for appellant; FRANCIS X. BUSCH, WILLIAM KLEVS and STEPHEN A. MITCHELL, of counsel.

MYER N. ROSENGARD, for appellee; JOSEPH EDIDIN and MARVIN GETZ, of counsel.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Simon Horvitz recovered a deficiency judgment for $1,631.76 against Harry Leibowitz and others (mort-

gagors) under a decree of the circuit court confirming the report of the master in chancery of the sale of property involved in an original foreclosure proceeding. David Horwich was appointed receiver under the same decree to take possession of the property and collect the rents during the redemption period for the purpose of satisfying the deficiency judgment. After the decree was entered and the receiver had been appointed and taken possession of the property the Stover Company, Inc., filed an intervening petition to reclaim certain refrigerators (Frigidaires) which it alleged were sold to Leibowitz under a conditional sale contract and that he had defaulted in his payments. The chancellor denied the prayer of the reclamation petition and this appeal followed.

For convenience the Stover Company, Inc., will hereinafter be referred to as the "intervenor," the complainant in the foreclosure proceeding, Simon Horvitz, as "respondent," and the receiver, David Horwich, as "receiver."

The intervening petition alleged that March 23, 1931, intervenor entered into a conditional sale contract with Harry Leibowitz, under the terms of which it installed 13 refrigerators in 13 apartments at 3502-8 West Van Buren street, Chicago, the premises foreclosed upon, and that Leibowitz agreed to pay $2,410.20 for them; that he paid $66.95 upon the signing of the contract and agreed to pay the balance of $2,343.25 in 35 equal successive monthly instalments, beginning with April 23, 1931; that he failed to make the monthly payments due in December, 1932, and January, 1933, at which time there remained an unpaid balance of $1,339; and that demand was made on the receiver for the return of the refrigerators, with which he refused to comply.

Respondent's answer alleged that he was the complainant in the bill to foreclose and under the terms of the junior mortgage deed upon which the foreclo-

sure proceeding was based, the real estate, together with "all rents, issues and profits arising therefrom, including the heating, gas and plumbing apparatus, fixtures, and everything appurtenant thereto, together with all and after acquired property," was conveyed by the mortgagor, Leibowitz, for the purpose of securing the indebtedness owing to respondent; that the refrigerators became part of the realty, and therefore his lien by virtue of his trust deed, as well as the decree entered in the cause, was superior to the "lien rights of the petitioner." The receiver filed an answer which neither admitted nor denied the allegations of the intervening petition.

It was stipulated between the parties that the original purchase price of the 13 refrigerators was $2,410.20; that there was a balance due of $1,339; that there was default in the payment of the December, 1932, and January, 1933, instalments which became due under the terms of the contract between intervenor and the mortgagor, Leibowitz; that a demand had been made on the receiver for the return of the refrigerators; that there was a deficiency decree for $1,631.76 in favor of respondent; and that the refrigerators originally were and continued to remain personal property up to and at the time of the hearing.

The agreement between the intervenor and Leibowitz for the purchase of the refrigerators, entitled "Frigidaire Order Form and Conditional Sale Contract," was received in evidence and its material provisions are as follows:

"The undersigned seller hereby sells and the undersigned purchaser hereby purchases, subject to the terms and conditions hereinafter set forth, the property described below . . . for a total time price of . . . leaving a deferred balance of $2,343.25 . . . . The deferred balance is payable . . . in 35 equal successive monthly installments . . . .

"1. Title to said property shall not pass to the purchaser until said amount is fully paid in cash.

. . .

"4. The purchaser shall keep said property free of all taxes, liens, and encumbrances; . . . shall not transfer any interest in this contract or said property; . . .

"5. The above property shall remain personal property . . . .

"6. The operation of this Frigidaire is guaranteed for a period of one year from date of installation . . . .

. . .

"8. In the event purchaser defaults on any payment . . . the full amount shall be immediately due and payable, the seller . . . may take immediate possession of said property without demand . . . and for this purpose the seller may enter upon the premises where said property may be and remove same. The seller may resell said property, so retaken, at public or private sale . . . . From the proceeds of any such sale, the seller shall deduct all expenses for retaking, repairing and selling such property, including a reasonable attorney's fee. The balance thereof shall be applied to the amount due; any surplus shall be paid over to the purchaser. In case of deficiency the purchaser shall pay the same with interest and the purchaser does hereby confess judgment in the amount of such deficiency. . . . "

The theory of respondent and receiver is that the contract in question is a chattel mortgage rather than a conditional sale contract, and is, therefore, void as against respondent who was a judgment creditor of Leibowitz, as well as against the receiver for failure to comply with statutory filing requirements.

Respondent's original theory as set forth in his answer was that the refrigerators were fixtures and had become a part of the realty covered by his lien

under his trust deed, but this defense was abandoned and waived at the hearing by both respondent and the receiver, who stipulated that the refrigerators remained personal property.

Intervenor contends that its contract with the mortgagor, Leibowitz, is a valid conditional sale contract and that under its terms it is entitled to regain possession of the refrigerators. Section 20 of the Uniform Sales Act, ch. 121a, Cahill's Revised Statutes, 1931, ¶ 23 (enacted in 1915), provides:

"Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer . . . ."

Long prior to the passage of this act conditional sale contracts were recognized and enforced in this State except as against bona fide purchasers and execution creditors. In 1898 our Supreme Court in *Gilbert v. National Cash Register Co.*, 176 Ill. 288, a leading case on the subject, said at pp. 294, 295:

"It seems to be settled by the weight of authority, that 'where by the written contract of the parties it is expressly provided that the title to the property shall remain in the vendor until the purchase money is fully paid, and there is no reservation of a lien, the transaction is a conditional sale and not a mortgage.' (6 Am. & Eng. Ency. of Law, — 2d ed. — p. 446.) . . . The cases seem to hold, that there is no doubt as to the character of the instrument when, by its terms, personal property is delivered by the owner to another with the requirement that the title shall remain in the owner until the payment of the purchase price. In such case the transaction is uniformly held to be a conditional sale, and not a mortgage.

"In *Plummer v. Shirley,* 16 Ind. 380, where an instrument was given upon a sale and delivery of personal property and provided that the ownership thereof was to remain exclusively vested in the vendor and not in the vendee, until the latter had fully paid the purchase money, it was held that the parties intended a conditional sale, and not a mortgage. To the same effect are the following cases: *Sumner v. Woods,* 52 Ala. 94; *Bingham v. Vandegrift,* 93 id. 283; *Jowers v. Blandy,* 58 Ga. 379; *Nichols v. Ashton,* 155 Mass. 205; *McComb v. Donald,* 82 Va. 903; *McGinnis v. Savage,* 29 W. Va. 362; *W. W. Kimball Co. v. Mellon,* 80 Wis. 133; *'The Marina,'* 19 Fed. Rep. 760; *Vasser v. Buxton,* 86 N. C. 335; *Frick v. Hilliard,* 95 id. 117. The authorities thus quoted from and referred to lead us to the conclusion, that the instrument here under consideration describes a transaction which is a conditional sale, and not a mortgage."

It is urged by respondent, and the receiver, that the proper construction of the contract involved in this proceeding must inevitably lead to the conclusion that it is a chattel mortgage rather than a conditional sale contract, which it purports in plain terms to be. Mindful that the real distinction between a conditional sale, and an absolute sale with a chattel mortgage back, is that under the former the vendor remains the owner subject to the vendee's right to acquire the title by complying with the stipulated conditions of the contract, while under the latter the vendee immediately becomes the owner subject to the lien created by the mortgage (*Bailey v. Baker Ice Machine Co.,* 239 U. S. 268), and also mindful of the clearly expressed intention of the parties from all of the language used in the contract and the purpose of the agreement as evidenced by its provisions and the conduct of the parties, we are compelled to conclude there is no merit in the contention that this contract should be held to be a chattel mortgage. The document is neither ambig-

uous nor uncertain in its terms and expresses as clearly as words can the intent of the parties to enter into a conditional sale contract.

It is true that respondent cites cases from Michigan, Colorado and Washington, that apparently sustain his position and construe contracts such as the one under consideration as chattel mortgages, but a careful examination of all the authorities cited, and many others, leads us to the conclusion that the decisions referred to are contrary to the overwhelming weight of authority in this country. Modern business, and its exigencies, was undoubtedly responsible for the present legal acceptance of the efficacy of conditional sale contracts and the magnitude of the business conducted by means thereof is generally recognized.

It is insisted, notwithstanding that clause 1 of the agreement quoted definitely reserved title to the refrigerators in the vendor until they were fully paid for, and notwithstanding the clearly expressed intention of the parties to the effect that it was a conditional sale, that clause 8, the so-called deficiency provision of the contract, converted it into a chattel mortgage regardless of all other considerations.

Conditional sale contracts containing deficiency clauses have been held to be valid, and have been repeatedly approved by the Supreme Court of the United States and by the courts of review of a great majority of our sister States. Such contracts which contain provisions for repossession and resale of the property sold upon default in the payment of instalments due on same, the application of the proceeds of the sale to the unpaid balance of the purchase price, and the liability of the vendee for any deficiency remaining, have been upheld by the Supreme Court of the United States and by the courts of review of most other jurisdictions. That the inclusion of such provisions in a conditional sale contract does not change

its character was declared in a well considered opinion by Mr. Justice Bigelow in *Herbert v. Rhodes-Burford Furniture Co.*, 106 Ill. App. 583, where it was said at pp. 587, 588:

"Is, then, the clause which provides, in case appellee shall take possession of the property, that it shall be sold, 'and out of the proceeds of sale retain a sufficient amount to pay the balance owing thereon,' so inconsistent with the idea that title was to remain in appellee that the transaction was an out-and-out sale? . . . Both reason and authority tells us, that there is nothing inconsistent in the provisions which declare that the title to the property shall remain with the vendor until payment has been made, and that in case the vendor, for breach of contract, shall retake the property, he shall sell it and pay himself the balance of the debt and pay over the balance of the proceeds to the vendee. In matters of conditional sale the law seems to be that 'if the condition of payment is not fully complied with or waived, the original vendor's rights become perfect and absolute, and he may follow the property . . . or recover its full value, and without any deduction for any partial payments made by the original vendee; they are all forfeited.' " Benjamin on Sales (Bennett's Ed. 1888), 270, and cases cited.

Substantially the same stipulations as appear in the contract in the instant case were contained in the contract before the Supreme Court of the United States in *Harkness v. Russell & Co.*, 118 U. S. 663, 666, where the court held:

"The first question to be considered is, whether the transaction in question was a conditional sale or a mortgage; that is, whether it was a mere agreement to sell upon a condition to be performed, or an absolute sale, with a reservation of a lien or mortgage to secure the purchase money. If it was the latter, it

is conceded that the lien or mortgage was void as against third persons because not verified by affidavit and not recorded as required by the law of Idaho. But, so far as words and the express intent of the parties can go, it is perfectly evident that it was not an absolute sale, but only an agreement to sell upon condition that the purchasers should pay their notes at maturity. The language is: 'The express condition of this transaction is such that the title . . . does not pass . . . until this note and interest shall have been paid in full.' If the vendees should fail in this, or if the vendors should deem themselves insecure before the maturity of the notes, the latter were authorized to repossess themselves of the machinery, and credit the then value of it, or the proceeds of it if they should sell it, upon the unpaid notes. If this did not pay the notes, the balance was still to be paid by the makers by way of 'damages and rental for said machinery.' . . . It cannot be said, therefore, that the stipulations of the contract were inconsistent with, or repugnant to, what the parties declared their intention to be; namely, to make an executory and conditional contract of sale. Such contracts are well known in the law and often recognized; and when free from any fraudulent intent are not repugnant to any principle of justice or equity, even though possession of the property be given to the proposed purchaser. The rule is formulated in the text books and in many adjudged cases.''

The following succinct statement of the rule as enunciated in recent cases from many jurisdictions is found in 37 A. L. R., p. 94:

"It has been held that the seller of property by conditional sale may resume possession thereof to increase his security, and resell it on account of the vendee, if the latter is in default and *where this remedy is given by the contract, if the proceeds of the sale are insufficient to satisfy the amount due on the*

*purchase price, the seller may, in an appropriate action, hold the buyer for the residue."* (Italics ours.) To the same effect are *Keeler v. Goodman,* 296 Fed. 909; *O. S. Stapley Co. v. Rogers,* 25 Ariz. 308, 216 Pac. 1072; *Matteson v. Equitable Min. & Mill. Co.,* 143 Cal. 436, 77 Pac. 144; *Continental Guaranty Corp. v. People's Bus Line,* 31 Del. 595, 117 Atl. 275; *Daniel v. Thornton & Co.,* 28 Ga. App. 428, 111 S. E. 575; *Lumbar v. Janzen,* 112 Kan. 197, 210 Pac. 186; *Rodgers v. Whitehead,* 127 Miss. 21, 89 So. 779; *First Nat. Bank of Missoula v. Marlowe,* 71 Mont. 461, 230 Pac. 374; *J. B. Van Derveer & Son v. Canzono,* 206 App. Div. 130, 200 N. Y. S. 563; *McCormick Harvesting Mach. Co. v. Koch,* 8 Okla. 374, 58 Pac. 626; *International Harvester Co. v. Bauer,* 82 Or. 686, 162 Pac. 856; and *Jones v. Reynolds,* 45 Wash. 371, 88 Pac. 577.

Since the passage of the Uniform Sales Act in this State, Cahill's St. ch. 121, ¶ 4 *et seq.,* the validity of conditional sales has been recognized as against bona fide purchasers and execution creditors. (*Sherer-Gillett Co. v. Long,* 318 Ill. 432.) While this case concerned only the rights of a bona fide purchaser from a conditional vendee, the reasoning of the court and the conclusions reached are equally applicable to judgment and execution creditors of such a vendee. At pp. 434, 435, the court said:

"It is a general, well-established principle that no one can transfer a better title than he has. (*Drain v. LaGrange State Bank,* 303 Ill. 330; *Williams v. Merle,* 11 Wend. 80, 25 Am. Dec. 604.) . . . The Uniform Sales act recognizes the validity of such contracts and specifically provides that no title can be passed by the purchaser of goods under such a contract 'unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.' There is no basis for the operation of an estoppel in this record." In our opinion the authorities are decisive that the contract under consideration is a conditional sale con-

tract, that it is valid and contains no provisions that render it susceptible of being construed as a chattel mortgage.

It is urged that the receiver occupied the position of a sheriff, levying upon the refrigerators in respondent's behalf. What could be more contrary to law and reason? The receiver was ordered to take possession of the premises with well defined duties to perform, which certainly did not include the seizure of the refrigerators that were admittedly personal property, for the purpose of satisfying respondent's deficiency judgment under the decree or for any other purpose. The receiver had no more authority to seize or withhold the possession of the refrigerators than he would have had to seize and sell an automobile, piano, or any other article of personal property belonging to Leibowitz or his conditional vendor, and in our opinion the chancellor was clearly in error in refusing to order the return of the refrigerators to intervenor.

For the reasons indicated the order or decree of the circuit court is reversed and the cause is remanded with directions to the chancellor to order the receiver to surrender the refrigerators to intervenor.

*Reversed and remanded with directions.*

GRIDLEY and SCANLAN, JJ., concur.